904 So.2d 520 (2005)
Dieter ZIKOFSKY, Appellant,
v.
MARKETING 10, INC., a/k/a (or successor by merger) Robby Vapor Systems, Inc., Elmer Strauss, individually, and Fran Strauss, individually, Appellees.
No. 4D04-1029.
District Court of Appeal of Florida, Fourth District.
May 25, 2005.
Rehearing Denied July 7, 2005.
*522 Robert J. Harkins and Mark J. Dearman of Dearman & Gerson, Plantation, for appellant.
Thomas D. Lardin of Thomas D. Lardin, P.A., Delray Beach, for appellees.
GROSS, J.
In this case, a close corporation sued a former business associate and prevailed after a non-jury trial. The issue we address is whether the corporation, its sole shareholder, and her husband may assert res judicata or collateral estoppel to defeat a lawsuit filed against them by the business associate who lost at the trial. We hold that res judicata bars the claim against the corporation, collateral estoppel precludes the claims against the shareholder and her husband, and affirm.
Fran and Elmer Strauss, wife and husband, were involved with a corporation called Marketing 10, Inc.; Fran was the sole shareholder and Elmer was a creditor. As president of the corporation, Fran entered into a stock option agreement with Dieter Zikofsky.
A dispute arose concerning the stock option agreement. The dispute was resolved by a 1997 agreement that included a covenant by Zikofsky not to compete and a $50,000 payment to Zikofsky.
Marketing 10 later sued Zikofsky for breach of the 1997 agreement. A successor corporation, Robby Vapor Systems, Inc., was substituted for Marketing 10 as the plaintiff during the litigation. The corporation sought to enforce the 1997 agreement, including the covenant not to compete; alternatively, the corporation sued to recover its $50,000 payment, contending that Zikofsky had fraudulently induced it to enter into the 1997 agreement.
Among his affirmative defenses, Zikofsky asserted that Marketing 10 had fraudulently induced him to enter into the 1997 agreement. The trial judge denied Zikofsky's motion to file a counterclaim against the corporation and third party complaint against the Strausses.[1] A pretrial stipulation *523 identified one triable issue as "[w]hether Zikofsky's execution of the [1997 agreement] was procured by fraud."
The case was tried non-jury. In a final judgment dated November 13, 2001, the trial court did not grant the corporation's request for injunctive relief. However, without elaboration, the court awarded the corporation $50,000, plus pre-judgment interest as a final judgment against Zikofsky. The corporation thus prevailed on its claim that Zikofsky had fraudulently induced it to enter into the 1997 agreement.
Before the final judgment was rendered in the first suit, on October 2, 2001, Zikofsky filed a separate lawsuit against Robby Vapor Systems and each of the Strausses, individually. All counts of the second suit turned on the claim that the Strausses, who were both involved in the operation of the business, had fraudulently induced Zikofsky to enter into the 1997 agreement.
After the entry of final judgment in the first case, Robby Vapor Systems and the Strausses moved for summary judgment in the second lawsuit on the grounds of either collateral estoppel or res judicata. Without elaboration, the trial court granted the motion and entered a summary final judgment.
The doctrine of res judicata bars Zikofsky's second lawsuit against Robby Vapor Systems.
To successfully invoke a res judicata defense, a party must satisfy two prerequisites. See Ludovici v. McKiness, 545 So.2d 335, 337 (Fla. 3d DCA 1989). First, a judgment on the merits must have been rendered in a former suit. See, e.g., Tyson v. Viacom, Inc., 890 So.2d 1205, 1209 (Fla. 4th DCA 2005) (en banc). Second, four identities must exist between the former suit and the suit in which res judicata is to be applied: "`(1) identity in the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the actions; and (4) identity of the quality or capacity of the persons for or against whom the claim is made.'" Id. (citations omitted). The policy "underlying res judicata is that if a matter has already been decided, the petitioner has already had his or her day in court, and for purposes of judicial economy, that matter generally will not be reexamined again in any court (except, of course, for appeals by right)." Topps v. State, 865 So.2d 1253, 1255 (Fla.2004) (emphasis in original).
To decide whether there is an identity of cause of action between two lawsuits, a court looks not only at the causes of action actually raised in the first suit, but also at "`every other matter which the parties might have litigated and had determined, within the issues as [framed] by the pleadings or as incident to or essentially connected with the subject matter' of the first litigation." Tyson, 890 So.2d at 1214 (Gross, J., concurring specially) (quoting Hay v. Salisbury, 92 Fla. 446, 109 So. 617, 621 (1926)). This narrow transactional test extends to "essentially connected" claims that a defendant in a former action failed to raise as a defense. See Fla. Real Estate Comm'n v. Harris, 134 So.2d 785, 788 n. 7 (Fla.1961) ("`A judgment or decree unreversed is conclusive upon parties and estops them from setting up in a new suit brought to annul or set it aside, any matter of defense of which the parties could have availed themselves in the original proceeding, the evidence of the facts constituting the defense having been known to the parties in due time.'") (citation omitted).
*524 In Equitable Life Assurance Society of United States v. McKeithen, 130 Fla. 568, 178 So. 127, 128-29 (1938), the supreme court applied the narrow transactional test to hold that res judicata barred an insurance company from contending that an insurance policy had been procured by fraud, when the company had failed to raise the fraud claim in an earlier lawsuit for breach of the same insurance contract.
Equitable Life involved two lawsuits. In the first action, an insured prevailed on his claim for disability benefits under an insurance contract. The insurance company raised only one defense, that the insured did not have a permanent physical disability. In a second lawsuit, the insured sought disability benefits under the same contract for payments that came due after the time period at issue in the first lawsuit. In the second lawsuit, the insurance company raised the defense that the policy had been procured by fraud. The trial court found that res judicata barred the insurance company from raising the fraud defense in the second lawsuit. The insurance company appealed.
The supreme court framed the issue:
Can a defendant, when sued on a contract, file a single defense which recognizes the validity of the contract, and when, after judgment is entered against the defendant in that action, in a second action on the same contract, plead that the contract is invalid on account of fraud in its procurement, when the facts constituting the alleged fraud were known to the defendant before the day of the trial in the first action?
Id. at 128. The court answered its question in the negative, holding that the insurance company was barred from raising the fraudulent procurement defense in the second lawsuit, writing that
where a suit is upon the s[am]e contract, and the validity of the contract has been decided, by necessary implication, in the former suit, and the rights of the parties have been established under the contract in that case, neither party can attack the validity of such contract in a subsequent suit thereon between the same parties.
Id. at 130. Thus, in a suit on a contract, the failure of a defendant to raise a fraudulent inducement defense will bar the defendant from later raising the defense in a second action on the same contract or from making fraudulent inducement "the basis of a subsequent suit by the defendant" against the plaintiff. Id. at 130 (citation omitted).
Equitable Life controls the result in this case as to Robby Vapor Systems. The first lawsuit involved a suit on a contract; Robby Vapor Systems was a party. Zikofsky raised a fraudulent inducement defense. Even if he had not, the holding in Equitable Life required him to raise the defense in the first lawsuit as a challenge to the validity of the 1997 agreement. The trial court entered a final judgment against Zikofsky. To decide for Robby Vapor Systems, the trial court necessarily rejected Zikofsky's fraud-based defense. As in Equitable Life, "the validity of the contract [was] decided" by the judgment in the first case. Id. Applying res judicata, that judgment bars Zikofsky from using fraudulent inducement as a defense or as a basis for a cause of action against Robby Vapor Systems in a later lawsuit.[2]
*525 Even though he filed the second lawsuit while the first one was still pending, Zikofsky cannot avoid the effect of res judicata. The fraud claim against Robby Vapor Systems was a compulsory counterclaim that could be brought as an independent suit while the first suit was still pending; however, once the first suit was terminated by the entry of a final judgment, the second suit was "barred under the doctrine of res judicata." Chassan Prof'l Wallcovering v. Victor Frankel, Inc., 608 So.2d 91, 93 (Fla. 4th DCA 1992); Cheezem Dev. Corp. v. Maddox Roof Serv., Inc., 362 So.2d 99 (Fla. 2d DCA 1978).
While res judicata applies to bar Zikofsky's claims against Robby Vapor Systems, the doctrine is inapplicable to the causes of action he brought against the Strausses, because they were not parties to the first lawsuit, so the "identity of the parties" prerequisite was not satisfied.
Although the Strausses' absence as parties in the first lawsuit precludes them from raising the res judicata defense, they still satisfy the requirements of collateral estoppel in the second case.
"The doctrine of collateral estoppel (or issue preclusion), also referred to as estoppel by judgment" and estoppel by matter of record,[3] is related to res judicata, but it is a different concept. Topps, 865 So.2d at 1255. In Florida, collateral estoppel bars relitigation of the same issue between the same parties which has already been determined by a valid judgment. Id.; Stogniew v. McQueen, 656 So.2d 917, 919 (Fla.1995). Collateral estoppel applies even when a present and former cause of action are different and it bars relitigation of specific issues  "that is to say points and questions"  that were actually litigated and decided in the former suit. See Gordon v. Gordon, 59 So.2d 40, 44 (Fla.1952); GLA & Assoc., Inc. v. City of Boca Raton, 855 So.2d 278, 281 (Fla. 4th DCA 2003). "Florida has traditionally required that there be a mutuality of parties in order for the doctrine to apply. Thus, unless both parties are bound by the prior judgment, neither may use it in a subsequent action." E.C. v. Katz, 731 So.2d 1268, 1269 (Fla. 1999) (quoting Stogniew, 656 So.2d at 919).
Zikofsky argues that the Strausses cannot raise collateral estoppel because they were not parties to the first lawsuit. This approach reads the "same parties" requirement of collateral estoppel too narrowly. We have held that "a ruling adverse to a controlling person of a corporation on a given claim precludes the corporation from litigating that [issue] in a subsequent action." Fed. Deposit Ins. Corp. v. Hemmerle, 592 So.2d 1110, 1117 (Fla. 4th DCA 1991). The converse of that holding is also true; a ruling against a corporation in a final judgment is binding in later litigation upon individuals who fully participated in the earlier lawsuit through their control of the corporation. Red Carpet Corp. v. Roberts, 443 So.2d 377, 380 (Fla. 1st DCA 1983); see also P.H. Vartanian, Judgment as Conclusive as Against, or in Favor of, One Not a Party of Record or Privy to a Party, Who Prosecuted or Defended Suit on Behalf and in the Name of Party, or Assisted Him or Participated with him in its Prosecution or Defense, 139 A.L.R. 9, 63-65 (1942).
McGregor v. Provident Trust Co. of Philadelphia, 119 Fla. 718, 162 So. 323 (1935), is the leading Florida case addressing whether a controlling shareholder of a *526 corporation and a corporation are the "same" party for the purpose of collateral estoppel. There, the supreme court recognized the general rule that
in order for a person or corporation to be brought within [the doctrine of collateral estoppel],[4] it is not necessary for him to have been a formal record party [in an earlier lawsuit]. His conduct may have been such as to give him the status of a party in actuality, and in such event the courts will not withhold from him the application of the rule because of the technical objection that he was not a party on the record.
Id. at 328. The court explained that collateral estoppel can apply to those who, though not actually named in the prior lawsuit, are situated in such a way as to be considered a party "in the larger sense." Id. at 329.
Applying this broader concept of a party, the supreme court held that an estate of a corporation's largest shareholder was such a "party in the larger sense" to a lawsuit against the corporation. Id. at 329-30. Being in "direct charge and control of the company," the estate "had charge of the defense" of an earlier suit, "controlled the proceedings, employed the attorneys, and through them presented and cross-examined witnesses." Id. at 330; see Cecil v. Cecil, 19 Md. 72, 1862 WL 2345 (1862);[5]Castle v. Noyes, 14 N.Y. 329, 1856 WL 6769 (1856). We note that the broadened concept of parties in McGregor does not violate the mutuality of parties requirement of collateral estoppel, since both controlling parties and actual parties to the earlier judgment are bound by it.
In this case, the Strausses can claim the benefit of the earlier judgment for the purpose of raising collateral estoppel because they controlled that litigation in the first case on behalf of the corporate defendant. Consistent with the mutuality requirement, had Zikofsky prevailed at the first trial on his defense, the Strausses would have been bound in the second lawsuit by the court's ruling on the issue of fraudulent inducement. It appears from this record that Zikofsky's fraudulent inducement defense was adjudicated in the first suit. The trial court accepted the *527 corporation's claim that it had been fraudulently induced by Zikofsky and awarded a money judgment against Zikofsky. The pretrial stipulation indicated that Zikofsky's fraudulent inducement defense was an issue to be tried. To rule in favor of the corporation, the trial judge must have rejected Zikofsky's attack on the validity of the contract. The record does not contain a transcript of the first trial. Nothing in the record indicates that Zikofsky abandoned the defense at or before trial. Having once litigated the issue of whether he had been fraudulently induced by the Strausses to enter into the 1997 agreement, Zikofsky was precluded by the first judgment from relitigating the same issue in the second lawsuit.
Affirmed.
STEVENSON and SHAHOOD, JJ., concur.
NOTES
[1] This court upheld the trial court's decision not to allow the counterclaim and third party complaint, because the motion to add these pleadings "came less than three months before trial, over two years after Robby Vapor Systems had last amended its complaint." Zikofsky v. Robby Vapor Sys., Inc., 846 So.2d 684, 685 (Fla. 4th DCA 2003).
[2] We note that in Equitable Life, before the first trial, the insurance company became aware of the facts that would have supported a fraudulent inducement defense. 178 So. at 128. However, unlike this case, a procedural ground prevented the company from raising the defense at the first trial. Nonetheless, the supreme court applied res judicata to bar the fraudulent inducement defense at the second trial.
[3] See McGregor v. Provident Trust Co. of Phila., 119 Fla. 718, 162 So. 323, 328 (1935).
[4] McGregor is difficult reading, in part because the supreme court discusses collateral estoppel as one of two rules of the "fundamental doctrine" of "res adjudicata." 162 So. at 327. However, the supreme court makes it clear that its discussion of the effect of a judgment against a corporation on the controlling shareholder was part of the law of "estoppel by matter of record, or, as it is most commonly called, as an estoppel by judgment." Id. at 328.
[5] In McGregor, the supreme court noted that its decision was in "every compliance with the rule laid down in Cecil [1862 WL 2345, at *5]." In Cecil, the Maryland Supreme Court set out this rule:

Justice requires that every cause be once fairly and impartially tried; but the public tranquility demands that having been once so tried, all litigation of that question, and between those parties, should be closed forever. It is also a most obvious principle of justice, that no man ought to be bound by proceedings to which he was a stranger; but the converse of this rule is equally true, that by proceedings to which he was not a stranger, he may well be held bound. Under the term parties, in this connection, the law includes all who are directly interested in the subject matter, and had a right to make defen[s]e, or to control the proceedings and to appeal from the judgment. This right involves also the right to adduce testimony and to cross-examine the witnesses on the other side. Persons not having these rights, are regarded as strangers to the cause. But to give full effect to the principle by which parties are held bound by a judgment, all persons who are represented by the parties, and claim under them, or in privity with them, are equally concluded by the same proceedings.
Id.