[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————

No. 11-15448

———————————

D.C. Docket No. 9:08-cv-80134-DTKH

FANE LOZMAN,

Plaintiff-Appellant,

versus

CITY OF RIVIERA BEACH, FLORIDA, a Florida municipal corporation,
MICHAEL BROWN, GLORIA SHUTTLEWORTH, NORMA DUNCOMBE,
VANESSA LEE, individuals, et al.,

Defendants-Appellees.

———————————

Appeal from the United States District Court
for the Southern District of Florida

———————————

(April 1, 2013)

Before CARNES and BLACK, Circuit Judges, and RESTANI,[*] Judge.

———————————

[*]   Honorable Jane A. Restani, Judge of the United States Court of International Trade,
sitting by designation.

RESTANI, Judge:

Plaintiff-Appellant Fane Lozman ("Lozman" or "Appellant") appeals from the district court's dismissal of his amended complaint asserting, inter alia, violations of his Constitutional rights, based on the Rooker-Feldman doctrine[1] and res judicata principles.   For the following reasons, we reverse.

## JURISDICTION AND STANDARD OF REVIEW

The jurisdiction of the federal courts to decide this matter is the primary issue here.   We have jurisdiction pursuant to 28 U.S.C. § 1291 to review a final order of a district court.   We review de novo the application of the Rooker-Feldman doctrine, res judicata, and collateral estoppel.   Doe v. Fla. Bar, 630 F.3d 1336, 1340 (11th Cir. 2011) (Rooker-Feldman); Miccosukee Tribe of Indians v. U.S. Army Corps of Eng'rs, 619 F.3d 1289, 1296 (11th Cir. 2010) (collateral estoppel); EEOC v. Pemco Areoplex, Inc., 383 F.3d 1280, 1285 (11th Cir. 2004) (res judicata).

## BACKGROUND

At issue here is the preclusive effect of a prior state court eviction action initiated by Defendant-Appellee City of Riviera Beach, Florida (the "City") against Lozman.   In August 2006, the City initiated a suit in state court to evict Lozman

---

[1]   Rooker v. Fid. Trust Co., 263 U.S. 413 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).

from the City-owned marina where Lozman lived in a floating home (the "eviction action").   Lozman responded to the eviction action by filing a counterclaim, a first amended counterclaim and, eventually, a second amended counterclaim.   The second amended counterclaim alleged that the City: violated Lozman's Petition Clause rights by filing the eviction action in retaliation for Lozman's initiation of a separate suit against the City (the "sunshine action") (Count I); violated Lozman's Free Speech Clause rights by filing the eviction action in retaliation for Lozman speaking at public meetings (Count II); and violated Federal and Florida Fair Housing Acts (Counts III and IV).   Count II may be interpreted as alleging that the City violated Lozman's Free Speech Clause rights by removing him from various city council meetings and by arresting him during a meeting.

In March 2007, a Florida jury returned a verdict in favor of Lozman, finding that Lozman's protected speech was a substantial or motivating factor in the City's decision to terminate his lease.   The state court issued a Final Order Denying Eviction.   The state court had severed the eviction issue from any other issue, and thus, the Final Order Denying Eviction was entered before the counterclaims were resolved.

In December 2007, Lozman filed a third amended counterclaim.   The third amended counterclaim contained two causes of action: breach of the marina

3

agreement and violation of Florida's Strategic Lawsuits Against Public Participation ("SLAPP") statute, which bars state entities from filing actions against individuals in retaliation for constitutionally protected activity.   On January 14, 2008, although the third amended counterclaim had by that time been filed, the state court dismissed the second amended counterclaim without prejudice based upon an agreement between counsel.

On February 8, 2008, Lozman filed his initial federal complaint in the current case, alleging deprivation of his Constitutional rights, retaliation, harassment, and false arrest by the City and various city officials (the "Individual Defendants") (collectively "Defendants").   In December 2008, the federal district court stayed proceedings pending resolution of the state court eviction action.

In July 2008, Lozman filed a fourth amended counterclaim in state court. The fourth amended counterclaim contained the same causes of action as the third amended counterclaim:   breach of the marina agreement and retaliation in violation of Florida's SLAPP statute.   The third and fourth amended counterclaims did not repeat the causes of action based on violations of the First Amendment, as alleged in Counts I and II of the second amended counterclaim.

In August 2010, the state court entered a Stipulation and Order for Dismissal of Counterclaim with Prejudice, which dismissed "the entire case, including the

4

Counter-claim . . . ."   In November 2010, Lozman moved to reopen his federal case and attached a proposed amended complaint, which contained the causes of action Lozman believed remained viable after the conclusion of the state court eviction action.   The amended federal complaint alleges that during a closed meeting on June 28, 2006, the Defendants formulated an official policy to harass Lozman as retaliation for bringing his sunshine action against the City and for publicly opposing the city council's redevelopment efforts.   Specifically, Lozman alleges the Defendants violated his rights by: (a) attempting to coerce Lozman into dismissing his sunshine action; (b) attempting to censor Lozman from speaking out on issues of redevelopment and corruption; (c) hiring a private investigator to follow Lozman; (d) arresting Lozman during a November 15, 2006 meeting; (e) publicly stating that Lozman had no First Amendment right to speak during a January 3, 2007 meeting; (f & g) removing Lozman from meetings on January 3, 2007 and May 2007; and (h) censoring Lozman's comments at meetings from June 2007 to November 2010 (the "non-admiralty-based claims").   The amended complaint also alleges that the City retaliated against him by filing an in rem action in federal district court (the "Admiralty Action") against Lozman's floating home for violations of the marina rules (the "admiralty-based claim").   The district court deemed the amended complaint filed.   The City and the Individual Defendants

5

moved to dismiss the complaint on various grounds, including Rooker-Feldman, res judicata, and collateral estoppel.

In May 2011, the district court dismissed all of Lozman's non-admiralty-based claims on the Rooker-Feldman doctrine and res judicata principles, based on the state eviction action.   The district court reserved ruling on the admiralty-based claim because the Admiralty Action was ongoing in federal court.   In August 2011, we affirmed the City's ability to foreclose on Lozman's floating home and concluded that Lozman had failed to show that the Admiralty Action was retaliatory.   City of Riviera Beach v. That Certain Unnamed Gray, Two-Story Vessel Approximately Fifty-Seven Feet in Length, 649 F.3d 1259, 1262 (11th Cir. 2011), rev'd 133 S. Ct. 735 (2013).   In October 2011, the district court relied on our opinion to dismiss Lozman's admiralty-based claim on collateral estoppel grounds and entered an Order of Final Dismissal with Prejudice and Close-Out.   Lozman now appeals the dismissal of his amended complaint.

## DISCUSSION

## I.    Rooker-Feldman Doctrine[2]

---

[2]   Although this appeal is before us on a motion to dismiss, we may consider matters outside the complaint because this is a factual attack on the complaint for lack of subject matter jurisdiction.   See Carmichael v. Kellogg, Brown & Root Serv., 572 F.3d 1271, 1279 (11th Cir. 2009) ("[W]here a defendant raises a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence such as deposition testimony and affidavits.").

Appellant argues that the Rooker-Feldman doctrine does not deprive the lower federal courts of subject matter jurisdiction over his amended complaint because he commenced his federal action before the state court issued judgment and he is not a state court loser complaining of injuries resulting from a state judgment. The Defendants argue that the Rooker-Feldman doctrine bars subject matter jurisdiction here because the federal action was commenced after the state court proceedings ended and involves essentially the same claims as the state eviction action.

The Rooker-Feldman doctrine states that federal district courts have "no authority to review final judgments of a state court . . . ." Nicholson v. Shafe, 558 F.3d 1266, 1271 (11th Cir. 2009) (quoting Feldman, 460 U.S. at 482); see Casale v. Tillman, 558 F.3d 1258, 1260 (11th Cir. 2009) (per curiam) ("The Rooker-Feldman doctrine makes clear that federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court.").

The Supreme Court has reiterated that the scope of the doctrine is narrow and is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting

7

district court review and rejection of those judgments."   Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).   "We determine the applicability of Rooker-Feldman by 'adhering to the language in Exxon Mobil delineating the boundaries of the Rooker-Feldman doctrine.'"   Vasquez v. YII Shipping Co., 692 F.3d 1192, 1196 n.1 (11th Cir. 2012) (brackets deleted) (quoting Nicholson, 558 F.3d at 1274).

Here, Lozman commenced his federal action on February 8, 2008, when he filed his complaint in federal court.[3]   Thus, the Rooker-Feldman doctrine will apply only if state court proceedings ended before February 8, 2008.   See Nicholson, 558 F.3d at 1274 (finding Rooker-Feldman did not apply when appellants "commenced the federal district court action before the end of state proceedings").   The City argues that the Rooker-Feldman doctrine applies because state court proceedings ended, at least to the First Amendment claims raised in the second amended counterclaim, on January 14, 2008, twenty-five days prior to Lozman filing his

_____

[3]   In Nicholson, we relied on the date the plaintiff filed his federal complaint to calculate when federal proceedings commenced.   558 F.3d at 1276.   The Individual Defendants argue the applicable date for when a federal action is commenced is the date the amended federal complaint is filed.   Such a rule, however, would conflict with our decision in Nicholson, where we noted that based on Exxon Mobil, "the Rooker-Feldman doctrine cannot spring into action and vanquish properly invoked subject matter jurisdiction in federal court . . . ."   558 F.3d at 1279 n.13 (quoting Exxon Mobil, 544 U.S. at 294).   Accordingly, if a federal court has properly invoked subject matter jurisdiction at the time of the initial federal complaint, the Rooker-Feldman doctrine cannot spring into action and eliminate jurisdiction merely because an amended complaint is filed.   Thus, the Rooker-Feldman analysis here depends on whether there is properly invoked jurisdiction at the time of Appellant's initial federal complaint.

8

initial federal complaint, when the state court dismissed Lozman's second amended counterclaim without prejudice.   According to the City, the dismissal without prejudice of the second amended counterclaim finally resolved the First Amendment claims because Lozman did not re-plead those claims in state court.

In Nicholson, we noted that state court proceedings end for Rooker-Feldman purposes in three scenarios: "(1) when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved, (2) if the state action has reached a point where neither party seeks further action, and (3) if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated."   See Nicholson, 558 F.3d at 1275 (quoting Federacion de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R., 410 F.3d 17, 25 (1st Cir. 2005)) (internal quotations omitted).

The third scenario is based on a hypothetical federal action described in ASARCO Inc. v. Kadish, 490 U.S. 605 (1989).   See Federacion, 410 F.3d at 25.   In ASARCO, a state's highest court issued declaratory judgment invalidating a state statute but remanded the case for the trial court to determine whether the plaintiffs were entitled to any further relief.   490 U.S. at 610.   The defendants successfully petitioned for certiorari and the U.S. Supreme Court reviewed whether the state's

9

highest court was correct in concluding that the state statute was inconsistent with federal law.  Id. at 625.   In deciding whether it had jurisdiction, the Supreme Court rejected the argument that the state court defendants should have pursued their certiorari petition as a new action in federal district court.  Id. at 622–23.   The Court explained that a federal district court would have lacked jurisdiction under Rooker-Feldman to decide whether the state court's decision was in error.  Id. at 623; see Exxon Mobil, 544 U.S. at 287 n.2 (noting that the hypothetical district court action described in ASARCO was consistent with the court's limited interpretation of Rooker-Feldman).

Here, the state court's stipulated dismissal without prejudice and with leave to amend cannot reasonably be interpreted as "finally resolving" the First Amendment claims raised in the second amended counterclaim.[4]   Unlike in ASARCO, where the highest state court had entered final judgment, the state court here had not issued any decision on the First Amendment claims raised in the second amended counterclaim.  ASARCO, 490 U.S. at 611–12.   A voluntary dismissal without

---

[4]   The City argues that when the dismissal without prejudice is considered in conjunction with the Final Order Denying Eviction, the dismissal of the second amended counterclaim finally resolved the issue of whether Lozman could recover monetary damages as a result of the retaliatory eviction.   Assuming this is a correct interpretation of the state court proceedings, the Final Order Denying Eviction is not relevant to Lozman's First Amendment claims that are based on conduct other than the eviction, which are the only type of claims raised in the federal amended complaint.

10

prejudice does not prevent Lozman from re-pleading the First Amendment claims in state court.   This is true even though the dismissal order granted Lozman fifteen days to amend and Lozman did not re-plead the First Amendment claims within this time frame.   See Sekot Labs., Inc. v. Gleason, 585 So. 2d 286, 287 (Fla. Dist. Ct. App. 1990) (rejecting argument that order granting twenty days leave to amend had automatically become a dismissal with prejudice upon expiration of the time allowed); Neu v. Turgel, 480 So. 2d 216, 217 (Fla. Dist. Ct. App. 1985) (noting that "[o]nce a court has dismissed a complaint with leave to amend, it cannot subsequently dismiss with prejudice for failure to timely amend unless" separate notice is given or the order specifies that no notice will be given).   Thus, regardless of the fact that Lozman did not re-plead the First Amendment claims in state court before initiating the federal action and regardless of whether state law eventually converts the dismissal without prejudice into a final determination, at the time of the commencement of the federal action, the state court had not yet finally resolved the First Amendment issues.

We decline to expand Nicholson's third scenario beyond situations similar to those of ASARCO or interpret Lozman's voluntary dismissal without prejudice as equivalent to a state court decision finally resolving the First Amendment issues.[5]

---

[5]   We need not decide whether there are other types of state court decisions that finally
(continued . . .)

11

Expanding the Rooker-Feldman doctrine to encompass the factual scenario here is contrary to the warning against expansion made in Exxon Mobil. See 544 U.S. at 284 (confining the doctrine to cases of the kind from which the doctrine acquired its name). Thus, state court proceedings as to the First Amendment issues raised in the second amended counterclaim did not end prior to the commencement of the federal action, and Rooker-Feldman does not divest the court of jurisdiction, regardless of whether the claims raised in state court are identical to those raised in federal court. Id. at 292 (noting "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court"). Because Rooker-Feldman does not apply, we need not address Defendant's arguments as to whether any of the claims asserted in the federal amended complaint are "inextricably intertwined" with a state court judgment under Casale v. Tillman, 558 F.3d 1258, 1260 (11th Cir. 2009).

---

resolve federal issues for Rooker-Feldman purposes but lack the finality of the state court judgment described in ASARCO (i.e. a final judgment under 28 U.S.C. § 1257 by the state's highest court). See Nicholson, 558 F.3d at 1275 n.9 (citing Federacion, 410 F.3d at 24) (noting that state proceedings may have ended for Rooker-Feldman purposes even if § 1257 jurisdiction is not available). Regardless of whether there may be other types of state judgments and decisions that fall short of § 1257 but, nevertheless, finally resolve federal issues sufficient to end state court proceedings, the stipulated dismissal without prejudice under the facts presented here is not such a decision.

## II.    Res Judicata

Appellant argues that Florida's res judicata principles do not bar his federal action here because the causes of action raised in the state eviction action are not identical to the causes of action raised in the federal amended complaint. Defendants argue that the state court's eviction action has a preclusive effect on all of Lozman's claims currently before the court.

Under Florida law,[6] res judicata applies where there is: "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; (4) identity of the quality [or capacity] of the persons for or against whom the claim is made"; and (5) the original claim was disposed on the merits.  Andela v. Univ. of Miami, 692 F. Supp. 2d 1356, 1371 (S.D. Fla. 2010) (applying Florida law); Heney v. Windsor Corp., 777 F. Supp. 1575, 1577 (M.D. Fla. 1991) (applying Florida law).  "For res judicata or collateral estoppel to apply, there must also exist in the prior litigation a 'clear-cut former adjudication' on the merits."  State St. Bank & Trust Co. v. Badra, 765 So. 2d 251, 254 (Fla. Dist. Ct. App. 2000) (quoting Suniland Assocs. v. Wilbenka, Inc., 656 So. 2d 1356, 1358

---

[6]   The Defendants concede that the district court erred in applying federal, instead of Florida, res judicata law.   "In considering whether to give preclusive effect to state-court judgments under res judicata or collateral estoppel, the federal court applies the rendering state's law of preclusion."  Cmty. State Bank v. Strong, 651 F.3d 1241, 1263 (11th Cir. 2011) (citations omitted); see 28 U.S.C. § 1738.   Because we are interpreting a Florida judgment, we apply Florida preclusion law.

13

(Fla. Dist. Ct. App. 1995)).   Identity of the cause of action is a question of "whether the facts or evidence necessary to maintain the suit are the same in both actions." Tyson v. Viacom, Inc., 890 So. 2d 1205, 1209 (Fla. Dist. Ct. App. 2005) (en banc and per curiam).

Defendants do not argue that the causes of action raised in the third and fourth amended counterclaims are identical to those raised in the federal amended complaint.   Instead, whether res judicata applies depends on whether the causes of action alleged in the second amended counterclaim are identical to those raised in the federal amended complaint and whether the claims alleged in the second amended counterclaim were disposed of on the merits.[7]   See Heney, 777 F. Supp. at 1577 (listing elements of Florida res judicata law).

In the amended federal complaint, Lozman brings 42 U.S.C. § 1983 deprivation, harassment, and retaliation claims and a common law false arrest claim. Lozman alleges violations of his First (free speech and right to petition), Fourth (unreasonable seizures), and Fourteenth (substantive and procedural due process

---

[7]   Res judicata applies only when the parties to the action, or their privies, are identical in the prior and subsequent action.   Huff Groves Trust v. Caulkins Indiantown Citrus Co., 810 So. 2d 1049, 1050 (Fla. Dist. Ct. App. 2002).   Here, the Individual Defendants were not a party to the state eviction action, and thus, they cannot rely on res judicata unless they are in privity with the City.   Generally, a government official sued in his or her official capacity is considered to be in privity with the government, but a government official sued in his or her individual capacity is not. See 18 Moore's Federal Practice - Civil § 131.40(2)(a).   We need not discuss Florida law on this issue, as res judicata does not apply to any of the claims asserted here.

14

and equal protection) Amendment rights.    Specifically, Lozman alleges his rights were violated by the Defendants' conduct of: (a) attempting to coerce Lozman into dismissing his sunshine action; (b) attempting to censor Lozman on issues of redevelopment and corruption; (c) hiring a private investigator to follow Lozman; (d) arresting Lozman for disorderly conduct during a November 15, 2006 meeting; (e) publicly stating that Lozman had no First Amendment right to speak during a January 3, 2007 meeting; (f) removing Lozman from a meeting on January 3, 2007; (g) removing Lozman from a meeting in May 2007; (h) censoring Lozman's comments at meetings from June 2007 to November 2010; and (i) filing a federal admiralty action against Lozman's floating home.[8]

Lozman's second amended counterclaim filed in the state eviction action alleged that the City violated his free speech rights by preventing him from speaking at various city council meetings and arresting Lozman because of his speech.[9]    The

---

[8] The district court dismissed the admiralty-based claim (i.e. filing the Admiralty Action was retaliatory) based on collateral estoppel and not res judicata.    Defendants, however, argue that all claims, including the admiralty-based claim, are barred by res judicata.    Accordingly, we address the admiralty-based claim here, as well.

[9] Although this matter is before the court on a motion to dismiss, we may take judicial notice of the court documents from the state eviction action.    See Fed. R. Evid. 201(b); Long v. Slaton, 508 F.3d 576, 578 n.3 (11th Cir. 2007) (citation omitted) (noting the court is not always limited to the four corners of the complaint at the Rule 12(b)(6) stage and taking judicial notice of undisputed facts contained in a report from a state agency); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (noting that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, (continued . . .)

15

second amended counterclaim does not allege that the Defendants attempted to coerce Lozman into dismissing the sunshine action, hired a private investigator, publicly stated that Lozman had no First Amendment right to speak at a city council meeting, or filed a retaliatory Admiralty Action.   Because these causes are action are based on conduct that is distinct from the conduct alleged in the state eviction action (arrest and removal from meetings), the causes of action are not identical. See Tyson, 890 So. 2d at 1208–09 (stating that claims based on different facts and evidence are not identical).   Additionally, the second amended counterclaim is dated January 8, 2007, and did not allege conduct that occurred after this date.   In contrast, the federal amended complaint alleges that the Defendants caused Lozman to be physically removed from a meeting in May 2007 and attempted to censor Lozman from June 2007 to November 2010.   The federal causes of action based on conduct occurring from May 2007 to November 2010 will involve different facts and evidence than the causes of action alleged in the eviction action based on prior meetings, and thus, the causes of action are not identical.   In sum, the federal claims based on the conduct described in paragraph 26 subsections (a), (c), (e), (g), (h) and (i), as listed above, are not precluded based on the state eviction action.

---

in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

16

The remaining causes of action asserted in the federal amended complaint (subsections (b), (d), and (f)) are identical to those alleged in Count II of the second amended counterclaim.   Specifically, the causes of action based on the Defendants' attempt to censor Lozman during city council meetings, the arrest of Lozman at a city council meeting, and the removal of Lozman from meetings during 2006 and 2007 were alleged in the state eviction action and in the federal amended complaint. Thus, whether res judicata bars these claims depends on whether the state court issued an adjudication on the merits of the claims asserted in the second amended counterclaim.

Although the Defendants bear the burden to demonstrate that res judicata applies and that there was a clear-cut adjudication on the merits in the prior suit, the Defendants did not provide legal or factual support, either before the district court or in its brief before this court, to demonstrate that claims alleged in the second amended counterclaim were incorporated into and addressed by the state court's Order for Dismissal of Counterclaim with Prejudice.   At oral argument, the City suggested that the state court's final judgment dismissing the entire action, including Lozman's "Counter-claim," necessarily converted the prior dismissal without prejudice of the second amended counterclaim into a dismissal on the merits.

Although this issues has not been addressed directly by Florida courts, the

17

case of <u>Tyson v. Viacom</u> is instructive.   890 So. 2d at 1205.   In <u>Tyson</u>, the plaintiff filed suit in a Florida state court alleging breach of contract and a whistle-blower claim.   <u>Id.</u> at 1207–08.   The plaintiff voluntarily dismissed without prejudice his breach of contract claim and continued litigation on the whistle-blower claim.   <u>Id.</u> at 1208.   The state court eventually entered final judgment against the plaintiff on the whistle-blower claim.   <u>Id.</u>   The plaintiff then filed a second suit in state court, alleging an identical breach of contract claim and a fraud in the inducement claim. <u>Id.</u>   A divided Florida panel found that the breach of contract and fraud in the inducement claim were barred by res judicata based on the final judgment in the first suit.   <u>Tyson v. Viacom, Inc.</u>, 2003 Fla. App. LEXIS 15808, at *16–17 (Fla. Dist. Ct. App. Oct. 22, 2003) (opinion withdrawn).   The panel noted that although the breach of contract claim was not independently adjudicated in the prior suit, the final judgment on the whistle-blower claim "necessarily disposed of the entire cause of action" based on a combination of res judicata principles and the rule against splitting a cause of action.   <u>Id.</u>

Florida's Fourth District Court of Appeals granted a motion for rehearing en banc, reversed the first panel, and substituted a new opinion.   <u>Tyson</u>, 890 So. 2d at 1207.   The en banc panel stated that because the final judgment in the first suit addressed only the whistle-blower claim, it had no res judicata effect on the breach

18

of contract claim.   Id. at 1210.   The court noted that because the breach of contract claim was voluntarily dismissed without prejudice and was not included in the judgment, res judicata could not, by definition, apply.   Id.   The court also rejected an expansive definition of a "cause of action" and instead noted that allegations of separate, wrongful acts give rise to separate causes of action, even if the wrongful acts occurred within the context of a larger set of facts or relationship.   Id. at 1212–13.

If the City were correct that a final judgment on one claim necessarily acts as an adjudication on the merits of all claims previously raised in a case, even if such claims were previously dismissed without prejudice and not re-pled, then the en banc panel in Tyson would have found an adjudication of the breach of contract claim and reached the opposite result.   Moreover, to the extent the City is arguing that the First Amendment claims raised in the second amended counterclaim are barred here because those claims and the retaliatory eviction claim fall within a single "cause of action," this expansive view of a cause of action was explicitly rejected in Tyson.   See 890 So. 2d at 1212 (noting that without a limited res judicata approach, "a slippery slope could soon bar a range of suits related only by the broadest of contexts").   The fact that all of Lozman's claims fall within a broad set of facts related to his interaction with the City does not prevent him from bringing

19

separate suits based on separate allegations of wrongful conduct.  See id.

Furthermore, Florida courts view the issue of whether a judgment acted as an adjudication on claims, including previously dismissed claims, as a question of fact. See Hicks v. Hoagland, 953 So. 2d 695, 698 (Fla. Dist. Ct. App. 2007) (finding res judicata could not apply at summary judgment stage when record was not clear as to whether prior state court judgment intended to adjudicate certain claims that may have been dismissed prior to trial).  "[T]he party claiming the benefit of the former adjudication has the burden of establishing, with sufficient certainty by the record or by extrinsic evidence, that the matter was formerly adjudicated."  State St. Bank & Trust, 765 So. 2d at 254 (citation omitted); Hicks, 953 So. 2d at 698 ("For res judicata to apply, there must exist in the prior litigation a clear-cut former adjudication on the merits.") (citation and internal quotation marks omitted).

Based on the current factual record before the court, we cannot conclude that the First Amendment claims based on the Defendants' conduct of censoring Lozman, removing him from meetings, and arresting him were subject to a final adjudication on the merits in the eviction action.  The final judgment in the eviction action states that the entire case is dismissed with prejudice, including Lozman's "Counter-claim."  The judgment does not specify which "Counter-claim" was dismissed, but at the time of the dismissal, the live counterclaim was the fourth

amended counterclaim.    Thus, it is not clear whether the stipulated judgment intended to act as an adjudication on the merits as to all counterclaims alleged during the litigation, regardless if they were still live before the court, or to the claims alleged in the fourth amended counterclaim only.

Additionally, although Count II of the second amended counterclaim may be interpreted as alleging a deprivation claim based on conduct other than the eviction, the record suggests that the parties did not interpret the counterclaim in this manner during the eviction action.    This adds to the ambiguity as to whether the judgment in the state court eviction action applied to the First Amendment claims based on conduct other than the eviction.    Thus, because Defendants failed to demonstrate that there was a clear-cut adjudication on the First Amendment claims for conduct other than the eviction, we cannot affirm the dismissal of the federal amended complaint on this ground.

Florida's transaction test also does not bar the causes of action raised in the federal amended complaint.    Florida's transaction test states that res judicata will apply to those causes of action that were actually litigated, as well as "every other matter which the parties might have litigated . . . within the issues as framed by the pleadings or as incident to or essentially connected with the subject matter of the first litigation."    Zikofsky v. Mktg. 10, Inc., 904 So. 2d 520, 523 (Fla. Dist. Ct. App.

21

2005) (citation, quotation, and brackets deleted).   Despite the broad "every other matter" language, the transaction test is "narrow" and extends to "essentially connected claims that a defendant in a former action failed to raise as a defense." Id. (internal quotations omitted).

Here, the subject matter of the state eviction action was the legality of the state's attempt to evict Lozman from the marina.   The § 1983 allegations in the federal amended complaint, which are largely based on conduct occurring in city council meetings, are not "incident to or essentially connected" with the subject matter of whether the eviction was retaliatory.   Zikofsky, 904 So. 2d at 523. Instead, the amended complaint alleges separate acts of wrongful conduct occurring at different times than the eviction action.   Additionally, the false arrest and § 1983 causes of actions in the federal amended complaint, which are not based on the retaliatory eviction, would not have been a defense to the eviction because they would not prevent an otherwise valid eviction.   Thus, none of the federal causes of action is barred by res judicata under Florida's transaction test.

## III.   Collateral Estoppel

The district court dismissed Lozman's admiralty-based claim on collateral estoppel grounds.   Although the district court did not rely on collateral estoppel grounds to dismiss Lozman's non-admiralty-based claims, the Defendants argue we

should affirm the dismissal of the non-admiralty-based claims on this alternative ground.   Defendants argue that all issues raised in the federal amended complaint, except the admiralty-based claim, were fully litigated in the state eviction action. Defendants also argue that all of the issues raised in the federal amended complaint, except the false arrest claim, were fully litigated in the Admiralty Action.

### A.    State Eviction Action

Defendants argue that all of Lozman's non-admiralty-based claims were "actually raised by Lozman in the State proceeding, litigated against Riviera, and adjudicated on the merits" by the state court.

"Collateral estoppel principles are applicable to a subsequent proceeding only if, 1) the identical issues were presented in a prior proceeding; 2) there was a full and fair opportunity to litigate the issues in the prior proceeding; 3) the issues in the prior litigation were a critical and necessary part of the prior determination; 4) the parties in the two proceedings were identical; and 5) the issues were actually litigated in the prior proceeding."   Porter v. Saddlebrook Resorts, Inc., 679 So. 2d 1212, 1214–15 (Fla. Dist. Ct. App. 1996) (citing Dep't of Health and Rehab. Servs. v. B.J.M., 656 So. 2d 906 (Fla. 1995)).

"The courts have emphasized that collateral estoppel precludes relitigation of issues actually litigated in a prior proceeding."   B.J.M., 656 So. 2d at 910 (emphasis

23

in original); Seaboard Coast Line R.R. Co. v. Indus. Contracting Co., 260 So. 2d 860, 865 (Fla. Dist. Ct. App. 1972) ("It is not enough for the court to apply collateral estoppel where the former cause involved the same issues if it cannot be shown that such issues were clearly adjudicated."); see also Brown v. R.J. Reynolds Tobacco Co., 611 F.3d 1324, 1334 (11th Cir. 2010) (noting Florida courts enforce the "actually adjudicated" requirement with rigor).   As with res judicata, collateral estoppel is an affirmative defense, and the party asserting it "bears the burden to show that such an issue was formerly determined with sufficient certainty." Freehling v. MGIC Financial Corp., 437 So. 2d 191, 193 (Fla. Dist. Ct. App. 1983).

The Defendants have not specified what issues they believe are identical in the federal amended complaint and in the eviction action.   Instead, the Defendants seem to merely re-state their res judicata argument as a collateral estoppel argument. Under Florida law, however, collateral estoppel is not res judicata by another name, but applies "where the two causes of action are different" but issues – "that is to say points and questions" – are common to both actions.   Gordon v. Gordon, 59 So. 2d 40, 44 (Fla. 1952); Zikofsky, 904 So. 2d at 525 (noting the two doctrines are related but different).

Even if there were identity of issues raised in the state court eviction action and the federal amended complaint, the City has not shown the issues raised in the

24

state eviction action were "fully litigated." Andela, 692 F. Supp. 2d at 1372; see Seaboard, 260 So. 2d at 864‒65 (noting the burden is on the party asserting collateral estoppel to show issues clearly adjudicated). Although a stipulated dismissal qualifies as a dismissal on the merits for res judicata purposes, Florida courts do not seem to recognize issued resolved with a judgment entered into by consent or stipulation as being actually or fully litigated for collateral estoppel purposes. See JFK Med. Ctr. v. Price, 647 So. 2d 833, 834 n.1 (Fla. 1994) ("Moreover, a judgment by consent, though it terminates the claim to which it refers, is not an actual adjudication.") (citing Restatement (Second) of Judgments § 51); Hanover Ins. Co. v. Marriott Int'l, Inc., 685 So. 2d 894, 895 (Fla. Dist. Ct. App. 1996) (finding "Agreed Order Granting Partial Summary Judgment" insufficient for collateral estoppel because the issues were never "actually litigated" and also not a final judgment); Restatement (Second) of Judgments § 27, cmt. e ("In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated.").

Here, the claims raised in the state court eviction action were ended pursuant to a dismissal stipulated to by the parties. Any issues, therefore, were ended by consent and were not fully and actually litigated. Ambiguity as to whether the stipulated Order for Dismissal of Counterclaim with Prejudice intended to actually

25

litigate any issues, whether it applied to the First Amendment claims raised in the second amended counterclaim, and whether it intended to apply to claims not based on the eviction also counsels against the application of collateral estoppel here.  See Freehling, 437 So. 2d at 193 (noting it must be shown that an issue was "formerly determined with sufficient certainty").

### B.    Federal Admiralty Action

Although Lozman stated in his brief that he was not challenging the dismissal of his admiralty-based claim while the Admiralty Action was still pending before the Supreme Court, he indicated that the dismissal would not be valid if the Supreme Court reversed or vacated our decision.   We interpret Lozman's brief as preserving the ability to challenge the dismissal of his admiralty-based claim not on the merits but on the limited issue of the effect of a reversal by the Supreme Court.   Because the Supreme Court reversed our decision in the Admiralty Action, Lozman v. City of Riviera Beach, 133 S. Ct. 735, 746 (2013), we reach the issue of whether Lozman's admiralty-based claim is collaterally estopped.   Defendants argue that our decision in the Admiralty Action acts to collaterally estop not only the admiralty-based claim, but also all other claims in the amended federal complaint, except the false arrest claim, and we should affirm the dismissal of the complaint on this alternative ground.

26

Federal[10] collateral estoppel law applies when, <u>inter alia</u>, the issue at stake is identical to the one involved in the prior proceeding and the issue was actually litigated and decided in the prior proceeding.   <u>Pleming v. Universal-Rundle Corp.</u>, 142 F.3d 1354, 1359 (11th Cir. 1998).   Additionally, the issue must have been "actually litigated and resolved in a valid court determination essential to the prior judgment . . . ."   <u>Taylor v. Sturgell</u>, 553 U.S. 880, 892 (2008).

Because the Supreme Court reversed our decision and concluded that the district court lacked subject matter jurisdiction over the case, the issues raised in the Admiralty Action have not been resolved in a valid or final judgment from a court of competent jurisdiction.   Accordingly, the Admiralty Action has no preclusive effect on any of the issues raised here.

## CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's dismissal of Appellant's amended complaint and remand for further proceedings not inconsistent with this opinion.

---

[10] Federal collateral estoppel principles apply here because the court is reviewing the effect of a federal court decision.   <u>See</u> <u>CSX Transp., Inc. v. BMWE</u>, 327 F.3d 1309, 1316 (11th Cir. 2003).

27