BENTON, J.
AMEC Civil, LLC (AMEC) asks us to overturn a judgment entered, on res judi-cata grounds, in favor of the Florida Department of Transportation (DOT), and to reverse the denial of partial summary judgment on AMEC’s count I for declaratory relief. We affirm the judgment.
AMEC’s contract with DOT to perform a major highway project established a Disputes Review Board (DRB), comprised of three construction professionals. The stated purpose of the DRB is to provide “special expertise to assist in and facilitate the timely and equitable resolution of disputes, claims, and controversies between the Department and the Contractor in an effort to avoid construction delay and future claims.” With an exception not relevant here, however, recommendations of the DRB are not binding on the parties.
The contract provides that “[n]o circuit court or arbitration proceedings on any *237 claim, or a part thereof, may be filed until after final acceptance ... of all Contract work by the Department or denial hereunder, whichever occurs last.” The contract required AMEC, upon completion of the contract, to submit all remaining claims to DOT no later than 180 days following final acceptance. Under the contract, DOT then had 120 days to review the claims and make payment or adjustments. DOT’s failure to respond to a claim within 120 days was deemed a denial.
Approximately one month after work under the contract began in November of 2001, AMEC claimed DOT breached the contract by failing to obtain permits which AMEC said were necessary for it to work at night (and cause noise in excess of otherwise applicable limits set by Jacksonville city ordinances). This claim was eventually submitted to the DRB but the parties did not accept the DRB’s recommendation. Instead, AMEC brought suit for breach of contract in circuit court in August of 2003 (Night Work Lawsuit).
AMEC continued work on the project, not only during the DRB’s consideration[1] of the claims that led to the Night Work Lawsuit, but also after filing the Night Work Lawsuit, which was still pending when DOT issued final acceptance of the construction project in May of 2006. Upon final acceptance, AMEC submitted for DRB review[2] all claims that had not been submitted previously. On October 31, 2006, AMEC provided DOT with a comprehensive list of the contractual breaches it had alleged and the adjustments to which it deemed itself entitled.
Beginning in December of 2006, DOT repeatedly but unsuccessfully sought continuances in and stays of the Night Work Lawsuit, notably on grounds that all claimed breaches of the parties’ contract should be adjudicated in a single lawsuit.[3] The Night Work Lawsuit went forward nevertheless and concluded, in October of *238 2007, when, after a jury trial, judgment was entered in favor of AMEC in the amount of $8.5 million. By this time, the DRB had made recommendations in some of AMEC’s remaining claims, as to entitlement but not as to quantum, and others had not been heard by the DRB.[4] After judgment was entered against it in the Night Work Lawsuit, DOT took the position it was no longer obligated to go before the DRB because its liability under the contract had been fully adjudicated.
Initiating the present case, AMEC filed a complaint in circuit court in February of 2008, and filed an amended complaint on October 8, 2008. The amended complaint describes the parties’ contract as one for “construction and reconstruction of certain major interstate interchanges and state roads within the city limits of Jacksonville, Florida.” Count I alleges DOT’S refusal to go forward with the DRB process and seeks declaratory judgment regarding AMEC’s rights and obligations under the portion of the contract establishing the DRB process. The remaining counts allege sundry, specific breaches of contract.
In due course, DOT filed a motion for final summary judgment, contending the present action was barred by res judicata, given the judgment against it awarding AMEC damages for breach of contract in the Night Work Lawsuit; and invoking the rule against splitting causes of action. “The doctrine of splitting a cause of action is related to res judicata in that it ‘requires that all damages sustained or accruing to one as a result of a single wrongful act must be claimed and recovered in one action or not at all.’ For purposes of this doctrine, the ‘cause of action’ is ... ‘the right which a party has to institute a judicial proceeding.’ ” Zamora v. Fla. Atl. Univ. Bd. of Trs., 969 So.2d 1108, 1112 (Fla. 4th DCA 2007) (quoting Tyson v. Viacom, 890 So.2d 1205 (Fla. 4th DCA 2005) (boldface omitted)).
AMEC filed a motion for partial summary judgment as to count I of its complaint, asking the trial court for a declaration that it could sue for damages without participating in DRB proceedings. The trial court denied AMEC’s motion for partial summary judgment,[5] dismissed AMEC’s second lawsuit as barred under the doctrine of res judicata, and entered the final summary judgment in favor of DOT now before us.
We review summary judgments de novo. See Futch v. Wal-Mart Stores, Inc., 988 So.2d 687, 690 (Fla. 1st DCA 2008) (“In reviewing an order granting final summary judgment by the trial court, this court applies the de novo standard of review to determine whether there are genuine issues of material fact and whether the trial court properly applied the correct rule of law.” (citing Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000)); Cox v. CSX Intermodal, Inc., 782 So.2d 1092, 1095-96 (Fla. 1st DCA 1999) (“When a defendant moves for summary judgment, ‘[t]he function of the court is solely to determine whether the ... record presented in support of summary judgment conclusively shows that the plaintiff cannot prove the claim alleged as a matter of law.’ ” (quoting Hervey v. Alfonso, 650 So.2d 644, 646 (Fla. 2d DCA 1995))). At issue here is application of the doctrine of res judicata.
“The doctrine of res judicata makes a judgment on the merits conclusive ‘not *239 only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action.’ Kimbrell v. Paige, 448 So.2d 1009, 1012 (Fla.1984).” Zamora, 969 So.2d at 1112. See also Saadeh v. Stanton Rowing Found., Inc., 912 So.2d 28, 31 (Fla. 1st DCA 2005) (noting that “[r]es judicata extends only to the facts and conditions as they existed at the time the prior court rendered the prior judgment”); Hicks v. Hoagland, 953 So.2d 695, 698 (Fla. 5th DCA 2007) (holding that the “record also establishes identity of cause of action. The facts and issues supporting the underlying transaction — a $2.5 million promissory note executed in June 1998 and the alleged default in 2001— existed at the time the Illinois state court rendered the prior judgment”); Gaither Corp. v. Skinner, 241 N.C. 532, 85 S.E.2d 909, 912 (1955) (barring subsequent action for discrete breach of “an entire and indivisible” building contract based on defects in roof discovered prior to entry of initial consent judgment, but after filing of the initial action for breach on grounds subsequent action was an “attempt[] to reliti-gate the same cause of action by seeking damages for another item of the alleged breach”).
Courts properly look not only to the claims actually litigated in the first suit, but also to “ ‘every other matter which the parties might have litigated and had determined, within the issues as [framed] by the pleadings or as incident to or essentially connected with the subject matter’ of the first litigation.” Zikofsky v. Marketing 10, Inc., 904 So.2d 520, 523 (Fla. 4th DCA 2005) (quoting Tyson v. Viacom, Inc., 890 So.2d 1205, 1214 (Fla. 4th DCA 2005) (en banc) (Gross, J., concurring specially)).
(1) When a valid and final judgment rendered in an action extinguishes the plaintiffs claim pursuant to the rules of merger or bar ..., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
(2) What factual grouping constitutes a “transaction”, and what groupings constitute a “series”, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties’ expectations or business understanding or usage.
Restatement (Second) of Judgments § 24 at 196 (1982).[6] Res judicata bars a subse *240 quent lawsuit when there is: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality in the person for or against whom the claim is made. See Albrecht v. State, 444 So.2d 8, 12 (Fla. 1984), superseded by statute on other grounds as stated in Bowen v. Fla. Dep’t. of Envtl. Regulation, 448 So.2d 566, 568-69 (Fla. 2d DCA 1984); Pfeiffer v. Roux Labs., Inc., 547 So.2d 1271, 1272-73 (Fla. 1st DCA 1989).
Two of the conditions necessary for application of the doctrine of res judicata, the identity of the parties and the identity of the capacities in which they sued and were sued, are not in dispute. AMEC argues, however, that there is no identity in the cause of action, asserting that DOT breached the contract in multiple ways and that a suit for one breach does not bar suit for subsequent breaches of the same contract. AMEC also argues that the damages flowing from different breaches are different, that count I seeks declaratory judgment, and that there is therefore no identity of the thing sued for.
Both the Night Work Lawsuit and the breaches alleged in the present action are based on a single contract between the parties. One test for determining the identity of a cause of action, for the purpose of applying res judicata, looks to the facts needed to maintain the action. See Peeples v. Peeples, 871 So.2d 945, 946-47 (Fla. 1st DCA 2004); Poe v. State Rd. Dep’t, 127 So.2d 898, 899 (Fla. 1st DCA 1961). In determining whether identity of causes of action exists, a court must consider the relationship between the facts and issues asserted to constitute a single transaction. See generally Gordon v. Gordon, 59 So.2d 40, 44-47 (Fla.1952). The central fact here is the parties’ single, indivisible agreement.
A contract is “indivisible” or “entire” when “by its terms, nature, and purpose, it contemplates and intends that each and all of its parts, material provisions, and the consideration, are common each to the other and interdependent.” 15 Williston on Contracts § 45:1 (4th ed. 2000). “There is a presumption against finding a contract divisible, unless divisibility is expressly stated in the contract itself, or the intent of the parties to treat the contract as divisible is otherwise clearly manifested.” Id. at § 45:4 (footnotes omitted). See, e.g., First Nat’l Bank of Hollywood v. Freedman, 244 So.2d 183, 188 (Fla. 1st DCA 1971) (holding a contract was “divisible in its nature ... if the intention is expressly stated in the contract”); Fla. Mortgage Fin., Inc. v. Flagler Plaza Corp., 308 So.2d 571, 572 (Fla. 3d DCA 1975) (“A contract should be treated as entire and indivisible when, by consideration of its terms, subject matter, nature and purpose, each and all of its parts appear to be interdependent and common to one another and to the consideration; a contract is indivisible *241 where the entire fulfillment of the contract is contemplated by the parties as the basis of the arrangement.”).
The fulfillment of the entire contract was plainly contemplated here. The portion[7] of the contract in the record on appeal provided for nonbinding recommendations from the DRB when any claim arose at whatever stage of the project, with the stated purpose of avoiding construction delay and future claims. The contract provisions in the record on appeal refute the notion that a party who disagreed with a DRB recommendation was to pursue individual claims seriatim in circuit court throughout the course of the contract term, simultaneously alleging breach in court while insisting on performance of a still viable contract outside court.[8] Arbitration or litigation was contemplated only after “final acceptance” of performance of the whole contract, and only after the parties had submitted all claims to the DRB for sorting out.
AMEC has presented no contract provision nor any other evidence that would establish the contract was divisible.[9] As explained in Mims v. Reid, 98 So.2d 498 (Fla.1957):
The law does not permit the owner of a single or entire cause of action or an entire indivisible demand to divide or split that cause of action so as to make it the subject of several actions, without the consent of the defendant. All damages sustained or accruing to one as a result of a single wrongful act must be claimed or recovered in one action or not at all. The law presumes that a single cause of action can be tried and determined in one suit, and will not permit the plaintiff to maintain more than one action against the same party for the same cause. This rule is founded on the plainest and most substantial justice— namely, that litigation should have an end, and that no person should be unnecessarily harassed with a multiplicity of suits. If the first suit is effective and available, and affords ample remedy to the plaintiff, the second suit is unnecessary and consequently vexatious. The rule against splitting causes of action is closely related to the doctrine of res judicata in this respect.
*242 Id. at 500-01 (citation omitted). The right which AMEC had to institute a judicial proceeding was to sue on the one cause of action it had,[10] the breach of an indivisible contract for the entire project.[11]
In both the initial action and the present case, the “thing sued” for was money damages allegedly sustained by AMEC as a result of the Department’s breach of the indivisible contract. The declaratory judgment count does not alter this overriding fact. Accordingly, there is identity of the “thing sued for.” Compare Inter-Active Servs., Inc. v. Heathrow Master Ass’n, Inc., 809 So.2d 900, 902-03 (Fla. 5th DCA 2002) (holding subsequent action not barred by res judicata because the “thing sued for” in the initial action was an injunction against Heathrow’s threatened breach of contract, while the “thing sued for” in the subsequent action was money damages allegedly sustained as a result of Heathrow’s actual breach of contract, where the damages alleged in the subsequent action (unlike the damages alleged here) “arose after trial” of the initial action).
AMEC relies on the decision in U.S. Project Management, Inc. v. Parc Royale East Development, Inc., 861 So.2d 74 (Fla. 4th DCA 2008),[12] asserting the court there *243 recognized that a suit for one breach of contract does not bar a suit for subsequent breaches of the same contract. AMEC argues that, at the time of filing the complaint in the Night Work Lawsuit, no other unresolved disputes or claims had been fully heard by the DRB and argues that it would have been premature to supplement the allegations made in the Night Work Lawsuit.
But it was the Night Work Lawsuit that was premature. AMEC was not required to file the Night Work Lawsuit in 2001. Filing suit before final acceptance was, indeed, arguably itself a breach. Only AMEC’s strategic choice prevented the joinder of all claims. We are not concerned here with a statutory claim, cf. Hillsborough County v. Unterberger, 534 So.2d 838 (Fla. 2d DCA 1988), or an action arising on a commercial lease where the “summary procedure statutes envision an expedited process to determine the right to possession promptly without the necessity of deciding all other issues between the parties.” Camena Invs. & Prop. Mgmt. Corp. v. Cross, 791 So.2d 595, 596-97 (Fla. 3d DCA 2001). See also Scovell v. Delco Oil, 798 So.2d 844, 846 (Fla. 5th DCA 2001). In the present case, the numerous alleged breaches of the indivisible contract could “with propriety have been litigated and determined” in a single action. Kimbrell v. Paige, 448 So.2d 1009, 1012 (Fla.1984) (quoting Wade v. Glower, 94 Fla. 817, 829, 114 So. 548, 552 (1927)). We perceive no justification for departing from the general rule that all claims arising out of the same indivisible contract constitute the same cause of action for purposes of res judicata.
Our supreme court has said that “res adjudicata” “is founded upon the sound proposition that there should be an end to litigation and that in the interest of the State every justiciable controversy should be settled in one action in order that the courts and the parties will not be pothered for the same cause by interminable litigation.” Gordon, 59 So.2d at 44. Res judicata has been characterized as a “rule of expediency, justice, and public tranquility,” that “will not be invoked where it will work an injustice.” Flesche v. Interstate Warehouse, 411 So.2d 919, 924 (Fla. 1st DCA 1982). There is no injustice in the learned trial judge’s decision not to give AMEC two bites at the apple. The general rule is that “when a final decree or judgment of a court of competent jurisdiction becomes absolute it puts at rest and entombs in eternal quiescence every justiciable, as well as every actually adjudicated, issue.” Gordon, 59 So.2d at 43. The general rule applies here.
Affirmed.
CLARK, J., concurs; KAHN, J., dissents with opinion.

. The contract provided: "During the course of the Disputes Review Board process, the Contractor will continue with the work as directed by the Engineer in a diligent manner and without delay or otherwise conform to the Engineer's decision or order, and will be governed by all applicable provisions of the Contract. Throughout any protested work, the Contractor will keep complete records of extra costs and time incurred. The Contractor will permit the Engineer and Board access to these and any other records needed for evaluating the dispute.”

. It appears that after the DRB issued its recommendations regarding the Night Work dispute, the DRB chairman resigned and a second DRB was not formed until March 2004. AMEC asserted that from March 2005 through February 2006, it presented 36 claims to the DRB on the issue of entitlement, hearings were held over the course of 20 days, and the DRB issued recommendations on entitlement only with regard to some of the claims. AMEC asserted that in September 2006, it submitted 26 claims to the DRB.

.On December 22, 2006, DOT moved for continuance of the Night Work Lawsuit, arguing AMEC should include all claims related to the contract. On January 9, 2007, the trial court in the Night Work Lawsuit continued the cause and re-set the trial for June 4, 2007. On April 20, 2007, DOT moved for a stay of the Night Work Lawsuit pending submission of all pending claims to the DRB as required by the contract. On May 22, 2007, the trial court denied DOT'S motion for stay. On June 4, 2007, however, the trial in the Night Work Lawsuit was rescheduled for October 8, 2007. On July 30, 2007, DOT filed a motion for stay of the Night Work Lawsuit pending mediation of all unresolved claims. The trial court denied this motion on September 24, 2007.
The trial court ruled AMEC was not required to add the subsequent alleged breaches, and that the Night Work Lawsuit could continue on the claims presented in that complaint which had fulfilled the DRB condition precedent. The trial court noted, however, that AMEC risked a subsequent trial court’s determining that claims for the alleged subsequent breaches were barred.

. DOT and AMEC each blamed the other for delaying the process and/or refusing to participate in hearing these claims before the DRB at various times.

. Our holding makes it unnecessary to address separately the trial court's order denying AMEC’s motion for partial summary judgment on count I.

. The Comment to this section notes that in “defining claim to embrace all the remedial rights of the plaintiff against the defendant growing out of the relevant transaction (or series of connected transactions), this Section responds to modern procedural ideas which have found expression in the Federal Rules of Civil Procedure and other procedural systems .... The transaction is the basis of the litigative unit or entity which may not be split.... Equating claim with transaction, however, is justified only when the parties have ample procedural means for fully developing the entire transaction in the one action going to the merits to which the plaintiff is ordinarily confined. A modern procedural system does furnish such means.... When a defendant is accused of ... acts which though occurring over a period of time were substantially of the same sort and similarly motivated, fairness to the defendant as well as the public convenience may require that they be dealt with in the same action.” Restatement (Second) of Judgments § 24 cmt. a, d, at 196— 98, 201 (1982).
AMEC had “ample procedural means for fully developing the entire transaction” in one action. Florida Rule of Civil Procedure 1.190(d) provides: "Upon motion of a party *240 the court may permit that party, upon reasonable notice and upon such terms as are just, to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.” Florida Rule of Civil Procedure 1.190(e) provides: "At any time in furtherance of justice, upon such terms as may be just, the court may permit any process, proceeding, pleading, or record to be amended or material supplemental matter to be set forth in an amended or supplemental pleading.” Contrary to the assertion of AMEC, the trial court’s ruling does not make these provisions mandatory. See Manning v. City of Auburn, 953 F.2d 1355, 1360 (11th Cir.1992) (Noting that "the filing of supplemental pleadings is optional for the plaintiff; the existence of the doctrine of res judicata does not make the filing of supplements mandatory. The doctrine of res judica-ta governs what is to be done about claims that should have been brought in an earlier case....”).

. AMEC asserts in the complaint that "A copy of the Executed Contract Form” was attached to the complaint as Exhibit A, that the "entire and integrated contract is voluminous, comprises thousands of pages," and that due "to volume, the entirety of the contract cannot reasonably be physically attached to this complaint.”

. Instead, as noted above, the contract provided that, upon DOT's final acceptance, AMEC was required to submit all remaining claims to DOT no later than 180 days following final acceptance, that DOT then had 120 days to review and make payment or adjustments, that DOT's failure to respond to a claim within 120 days was deemed a denial, and that this submission of claims was a condition precedent to circuit court proceedings.

. See 15 Williston on Contracts § 45:19 at 349-50 (4th ed. 2000) ("The fact that a judgment has been rendered on a prior action for breach as to a divisible portion of a divisible contract will not preclude the prevailing plaintiff in such an action, on res judicata grounds, from instituting a suit to recover on another divisible portion of the same contract. This is because where a contract is divisible so that full performance of one part may be made by both parties without affecting the subsequent performance or right of performance as to the remainder, recovery may be had for breach of a divisible part, and the injured party may proceed on each cause of action for such a breach separately. By contrast, where a transaction is represented by a single and indivisible contract, a breach of the contract will give rise to a single cause of action which cannot be split into distinct parts and separate actions cannot be maintained on them.” (footnotes omitted)).

. AMEC relies on 50 C.J.S. Judgments § 767 (1997), which stales in part: "In the case of successive breaches of a continuing contract, the critical date for claim preclusion purposes is the date that the earlier action is commenced, as opposed to the date of entry of the judgment in the earlier action. Accordingly, when the breach of a contractual obligation that was the subject of an earlier action did not terminate the contract, a subsequent action based on another breach could be barred by the earlier judgment only if the second breach occurred before the first action was commenced.” (Footnote omitted.) The contract at issue, however, is not a continuing contract. See Black's Law Dictionary 320 (7th ed. 1999) (A "continuing contract” is one "calling for periodic performances."). It instead was a contract for a discrete project, limited in time and scope.

. See 15 Williston on Contracts § 45:13 (4th ed. 2000): "[A] building or construction contract calling for certain work to be done for a designated price and providing for the making of progress payments to the contractor during the course of the work will not be considered divisible simply because of the provision for progress payments unless it is clear, from the contract terms as a whole that each individual progress payment is intended to be so apportioned or related to the corresponding portion of the contract work as to be the full consideration for that portion of the work.”

. Parc Royale, a condominium developer, retained U.S. Project, a real estate development consulting firm, for a condominium project. One of the contract's provisions obligated Parc Royale to pay U.S. Project a monthly fee. Another provision required Parc Royale to pay an incentive fee based on a specified scale after all units had been sold, provided a profit was realized. U.S. Project alleged it was excused from its consulting duties under the contract in 1997 because Parc Royale refused to pay its monthly fees for any services rendered in 1997. Parc Royale alleged no payments were due because the contract no longer existed. U.S. Project filed suit in 1997 for breach of contract, "specifically for failure to pay the monthly fee, seeking an award for all of its damages flowing from its expectation” under the agreement. U.S. Project Mgmt., Inc. v. Parc Royale E. Dev., Inc., 861 So.2d 74, 75 (Fla. 4th DCA 2003). The "expectation” was the monthly fee due and owing, plus a percentage of the future profits due under the incentive fee provision. The trial court found that U.S. Project had not shown that there was a breach of contract nor causation of damages which met the appropriate standard "for recovering future profits where a contract has not been fully performed.” Id. U.S. Project performed no additional work under the agreement subsequent to the filing of the initial litigation. In 2002, after all units in the condominium development were sold and a profit was realized, U.S. Project filed suit for breach of contract based on Parc Royale’s refusal to pay the incentive fee under the agreement. The trial court dismissed the suit based on tire principles of res judicata. Id. at 76. The court on appeal *243 reversed, finding no identity of the cause of action because the key issue in the initial litigation was whether the monthly fees had been paid and the key issue in the subsequent litigation was whether or not the incentive fee had been paid upon sale of the last unit. Id. at 77. The contract at issue in Parc Royale, however, was a divisible contract — it provided for the payment of a monthly fee for consulting duties and in addition, for the payment of an incentive fee after all units in a condominium had been sold (provided a profit was realized).