NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

WILLIAM A. LIVINGSTON, for himself )
and all others similarly situated, )
                                    )
        Appellant, )
                                    )
v.                                  )        Case No.   2D12-5616
                                    )
PAT FRANK, as Clerk of the Circuit )
Court of Hillsborough County, and )
CITY OF TAMPA, )
                                    )
        Appellees. )
                                    )
_____ )

Opinion filed July 30, 2014.

Appeal from the Circuit Court for
Hillsborough County; James M. Barton, II,
Judge.

Christa L. Collins of Christa L. Collins, LLC,
Tampa; Jackson H. Bowman of Moore,
Bowman & Rix, P.A., Tampa; and Kenneth
B. Bell of Clark, Partington, Hart, Larry,
Bond & Stackhouse, Pensacola, for
Appellant.

David M. Caldevilla, Vivian Arenas-Battles,
and Michael P. Bray of de la Parte & Gilbert,
Tampa; and Dale K. Bohner, Legal Counsel,
Office of the Clerk of the Court, Tampa, for
Appellee Pat Frank, as Clerk of the Circuit
Court of Hillsborough County.

James H. Shimberg, Jr., City Attorney, Jerry
M. Gewirtz, Chief Assistant City Attorney,
and Allison W. Singer, Assistant City
Attorney, Tampa, for Appellee City of
Tampa.

CASANUEVA, Judge.

William A. Livingston, for himself and all others similarly situated (Mr.

Livingston), seeks review of an order granting final summary judgment in favor of Pat

Frank, as Clerk of the Circuit Court of Hillsborough County (the Clerk), and the City of

Tampa (the City). Pursuant to the order, the trial court determined that Mr. Livingston

had "no property interest in the interest" earned on deposit funds held in the court

registry pursuant to quick-take eminent domain proceedings[1] in two consolidated cases,

and the Clerk and the City were thus entitled to summary judgment.

The instant appeal is not an appeal of the quick-take eminent domain

proceedings. As explained in this opinion, those consolidated cases were filed in 2007

and settled between Mr. Livingston and the City in 2008.[2] As a portion of his full

compensation in those eminent domain proceedings, Mr. Livingston may have been

entitled to the fair market value of the property on the day that title vested in the City

plus legal interest until the parties reached a settlement. We do not reach that issue

today because Mr. Livingston settled those cases. Under res judicata, he was not

---

[1]Chapter 74, Florida Statutes (2007).

[2]Although we refer only to Mr. Livingston, the eminent domain proceedings applied to all the defendants whose properties were the subject of the 2007 takings. The takings involved three parcels of property and occurred pursuant to two consolidated cases. We refer to Mr. Livingston throughout as the purported class representative and for clarity of reference.

entitled to file a second lawsuit seeking a payment of interest as a portion of his right to full compensation under Article X, section 6(a) of the Florida Constitution.

In the case on appeal, which was filed in 2011, Mr. Livingston argues that the funds placed on deposit with the Clerk during the eminent domain proceedings pursuant to section 74.051, Florida Statutes (2007), became his property when title to the real property vested in the City pursuant to section 74.061. Under this theory, he argues that he is entitled to all legal interest accruing on those funds while they were on deposit with the Clerk and that a second taking resulted from the Clerk's payment of that interest to the City. Because those deposit funds did not become Mr. Livingston's property until the Clerk transferred them to Mr. Livingston, we hold there was no second taking, and his right to any interest as a portion of the settlement of the eminent domain cases simply needed to be resolved in those proceedings. Accordingly, we affirm the final summary judgment in favor of the Clerk and the City.

## I. BACKGROUND

In 2007, the City began eminent domain proceedings for a road project for which it needed three parcels of property belonging to Mr. Livingston. The City availed itself of the abbreviated quick-take proceedings of chapter 74, Florida Statutes (2007).

Pursuant to the quick-take procedure, specified public bodies are entitled to take possession and title to property in advance of a final judgment by filing a condemnation petition and declaration of taking and depositing a good faith estimate of the value of the land into the registry of the court. § 74.031. Upon a finding that the petitioner is entitled to possession of the property prior to a final judgment, the trial court enters an order allowing the taking and directing the petitioner "to deposit in the registry

of the court such sum of money as will fully secure and fully compensate the persons entitled to compensation as ultimately determined by the final judgment." § 74.051(2). Upon making the deposit, the petitioner is vested with title and takes possession of the property and, in exchange, the right to full compensation for the property vests in the property owner. § 74.061. The matter of full compensation is then determined in accordance with the provisions of chapter 73, Florida Statutes (2007), which provides for the empanelling of a jury to make a final determination of value. §§ 74.061, 73.071.

After filing declarations of taking in accordance with the provisions of chapter 74, the City deposited funds into the court's registry, representing its good faith estimate of the value of each parcel. The Clerk chose to deposit these quick-take deposit funds into an interest bearing account, as was the Clerk's sole prerogative pursuant to section 74.051(4). Section 74.051(4) stated in pertinent part: "The clerk is authorized to invest such deposits so as to earn the highest interest obtainable under the circumstances in state or national financial institutions in Florida insured by the Federal Government. Ninety percent of the interest earned shall be paid to the petitioner."[3]

In January 2008, pursuant to stipulated orders of taking and disbursement of funds, the Clerk distributed a portion of the deposit funds to the county tax collector for unpaid ad valorem taxes due on Mr. Livingston's parcels and disbursed the

---

[3]The last sentence of section 74.051(4) has since been amended, effective July 1, 2013, to provide: "Ninety percent of the interest earned shall be allocated in accordance with the ultimate ownership in the deposit." See ch. 13-23, §§ 1, 2, at 220-21, Laws of Fla.

remaining principal to the trust account of Mr. Livingston's lawyer. The Clerk retained ten percent of the interest earned on the deposit funds as authorized by section 28.33, Florida Statutes (2007), and section 74.051(4), and transferred the remaining ninety percent of the earned interest to the City, as authorized by section 74.051(4).

Mr. Livingston and the City agreed to mediate the issue of full compensation rather than submitting it to a jury, and the parties entered into a full settlement agreement in April 2008. Pursuant to the settlement agreement, the parties submitted joint motions for entry of stipulated final judgments as to each parcel, providing for an agreed amount of "full compensation" to be paid. The stipulated final judgments stated in pertinent part: "The City will pay to [Mr. Livingston] [the agreed sums] in full settlement of claims for compensation from [the City] whatsoever, including statutory interest, if any, but excluding attorney's fees and costs. . . . There shall be no further award to [Mr. Livingston] in this matter."[4] After these final judgments were rendered, no appeal or other motions or orders regarding the eminent domain proceedings were filed until 2011.

## II. CASE ON APPEAL

In 2011, Mr. Livingston filed a new two-count class action suit against the Clerk and the City after allegedly becoming aware for the first time that the Clerk had earned interest on the quick-take deposit funds and had disbursed ninety percent of that earned interest to the City. In this new lawsuit, Mr. Livingston alleged that he was

---

[4]Specifically, the City was to pay the sum of $80,000 for parcels 192/792, and the sum of $43,500 for parcel 196, less the City's previous deposits of $41,250 for parcels 192/792 and $20,150 for parcel 196.

entitled to interest on the deposit funds because, at the moment the City deposited the funds, the City and he were deemed to have exchanged the possessory rights to the parcels and the deposit funds. He further alleged that the investment interest on the deposit funds was his "constitutional private property," and that this private property was unlawfully taken by the Clerk and the City to produce general revenue for the City when the Clerk paid ninety percent of that interest to the City. Thus, he further argued, the Clerk and the City had jointly and severally committed a per se taking of his private property and must therefore disgorge all investment interest.[5]

The first count of Mr. Livingston's complaint sought a declaration that the portion of section 74.051(4) directing the Clerk to pay the condemning authority ninety percent of all interest earned on quick-take deposit funds constituted a taking of private property in violation of the Takings Clause of the United States and Florida Constitutions.[6] The second count was for inverse condemnation based on the allegedly unconstitutional taking of that ninety percent of the interest earned.

The Clerk and the City filed answers, asserted affirmative defenses, moved for summary judgment on both counts, and adopted each other's motions. The allegedly dispositive issues the motions for summary judgment raised were that Mr. Livingston lacked standing; that his claims were barred by res judicata, collateral estoppel, settlement, and/or compromise; that his claims were barred by Florida Rule of Civil Procedure 1.540; that the Clerk's actions were authorized by sections 28.33 and/or 74.061; that Mr. Livingston's interest claim exceeded the limits of section 74.061 and

---

[5]Mr. Livingston does not dispute the Clerk's entitlement to ten percent of the interest as a statutory fee.

[6]U.S. Const. amend. V; art. X, § 6, Fla. Const.

was barred by sovereign immunity; and that the Clerk could not be sued for inverse condemnation. Mr. Livingston replied to the summary judgment motions but did not file his own competing motion for summary judgment.

The trial court entered a detailed order granting the motions for summary judgment, concluding that Mr. Livingston did not have title to or any right to use the deposited money during the period of time in which the money was on deposit in the court registry and accruing interest. Therefore, the court concluded, Mr. Livingston had no property interest in the interest he sought to recover by his suit. When the final summary judgments were rendered, Mr. Livingston timely appealed the trial court's ruling. We review the final summary judgments de novo. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000).

### III.  DISCUSSION

### A.  The Issue of Full Compensation is Res Judicata

The record demonstrates that Mr. Livingston pleaded entitlement to interest in the eminent domain proceedings, asserting in his answers to the City's taking actions that he was "entitled to and claims interest at the lawful rate on the amount of full compensation ultimately awarded by a jury from the date of taking to the date of payment." He further demanded that "such interest be included in the final judgment entered by this Court." The proceedings to acquire Mr. Livingston's real property, including the determination of full compensation, were resolved in 2008 by the entry of stipulated final judgments as to each parcel, following mediation between the parties. Each final judgment provided the stipulated amount to be paid to Mr. Livingston by the City "in full settlement of claims for compensation from Petitioner whatsoever."

- 7 -

Under the doctrine of res judicata,

"[a] judgment on the merits rendered in a former suit between the same parties or their privies, upon the same cause of action, by a court of competent jurisdiction, is conclusive not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action."

Kimbrell v. Paige, 448 So. 2d 1009, 1012 (Fla. 1984) (quoting Wade v. Clower, 114 So. 548, 552 (Fla. 1927) (citations omitted)). The court, therefore, must "look not only to the claims actually litigated in the first suit, but also to 'every other matter which the parties might have litigated and had determined, within the issues as [framed] by the pleadings or as incident to or essentially connected with the subject matter of the first litigation.' " AMEC Civil, LLC v. Dep't of Transp., 41 So. 3d 235, 239 (Fla. 1st DCA 2010) (alteration in original) (quoting Zikofsky v. Mktg. 10, Inc., 904 So. 2d 520, 523 (Fla. 4th DCA 2005)).

"The decision to engage in mediation and to settle at mediation means that remedies and options otherwise available through the judicial system are foregone. The finality of it once the parties have set down their agreement in writing is critical." Sponga v. Warro, 698 So. 2d 621, 625 (Fla. 5th DCA 1997). Further, "[w]here a controversy has been resolved by settlement agreement, there is no longer an actual or present need for a declaration as to the constitutionality of statutes or rules as applied to the consenting parties, and the trial court lacks jurisdiction to grant declaratory relief." Fla. Dep't of Ins. v. Guarantee Trust Life Ins. Co., 812 So. 2d 459, 461 (Fla. 1st DCA 2002); see also State v. Fla. Consumer Action Network, 830 So. 2d 148 (Fla. 1st DCA 2002).

The pleadings in the Livingston eminent domain actions identified the issue of interest as a component of full compensation, and the parties later stipulated to the amount due as "full compensation," including statutory interest. While the constitution guarantees full compensation, it does not provide for double dipping or amounts in excess of full compensation. Thus, both entitlement to interest and the amount of interest were to be determined in the "full compensation" cases; that is, the eminent domain proceedings. Otherwise, in theory, Mr. Livingston could acquire not one but two interest payments on the same monies used to pay, in part, full compensation. The stipulated final judgments make no mention of entitlement to the interest earned on the deposit funds, and Mr. Livingston is precluded by the finality of those proceedings from making a claim on such deposits, constitutional or otherwise. See Kimbrell, 448 So. 2d at 1012; AMEC Civil, 41 So. 3d at 239; Fla. Dep't of Ins., 812 So. 2d at 461.

Because the eminent domain cases and the matter of full compensation owed to Mr. Livingston from the City were fully resolved by the stipulated final judgments entered in the 2007 takings cases, Mr. Livingston cannot now argue he was also entitled to the interest generated by the quick-take deposit funds deposited pursuant to those 2007 takings. We hold such a claim is barred by res judicata.

**B. No Second Taking Occurred Because the Deposit was not Mr. Livingston's Property.**

We now address Mr. Livingston's argument that a second taking resulted from the Clerk's investment of the quick-take deposit funds and the payment of that investment interest to the City, entitling Mr. Livingston to full compensation under the Takings Clause. The provision in section 74.051(4) directing payment of interest to the

condemning authority could be a taking under the Takings Clause of the two constitutions or a matter of inverse condemnation only if the deposit belonged to Mr. Livingston at the time the interest accrued.  For the reasons explained below, Mr. Livingston's argument fails on that point.

Under Florida's quick-take statutory scheme, once the condemning authority makes the deposit, two acts occur simultaneously.  First, the condemning authority acquires title to the condemned property, and, second, the property owner's entitlement to full compensation under the respective constitutional provisions vests.  § 74.061.  It is the right to full compensation that vests, not a right to the specific funds, although common practice regularly releases the funds to the property owner.

Often those funds are only a partial payment, later supplemented by attorney's fees, costs, and interest.  There is no statutory requirement that compels the property owner to immediately receive the deposit monies.  Indeed, if the property owner takes possession of the deposit and the ultimate outcome of the eminent domain proceeding is an award less than the deposit, a monetary judgment is entered against the property owner for the excess.  See § 74.071.  Thus, there may be good reason for the property owner to await financial satisfaction until the conclusion of the takings case.  Similarly, there is no statute that forbids the condemning authority from using other funds to effectuate payment of full compensation.[7]

---

[7]The quick-take deposit serves a similar function to that of a surety bond, ensuring the condemning authority's performance of a complete taking, and, should the condemning authority fail to make full compensation, guaranteeing payment of at least part of the full compensation due.  In short, it provides security for performance.

For these reasons, we hold that the deposit funds are not the personal property of the property owner while those funds remain on deposit. Thus, there can be no second taking, whether against the Clerk or the City, under either the United States Constitution or the Florida Constitution. As previously held, the making of the deposit vests in the property owner an entitlement to be paid full compensation by the condemning authority, not an entitlement to those specific funds placed in deposit.

## IV. CONCLUSION

Mr. Livingston attempts to challenge the constitutionality of actions taken in separate eminent domain proceedings that were fully and finally resolved pursuant to stipulated final judgments. The matter of full compensation was fully resolved in the initial takings cases, and no further proceeding may be undertaken against the City as it is barred by the doctrine of res judicata. Further, we reject the assertion that a second taking resulted from the Clerk's investment of the quick-take deposit funds or the payment of that investment interest to the City and, as such, no separate cause of action is available against either the City or the Clerk. Accordingly, we affirm the summary judgment entered in favor of the City and the Clerk.

Affirmed.


ALTENBERND and WALLACE, JJ., Concur.