CASANUEVA, Judge.
In this consolidated appeal, the Florida Department of Transportation (the DOT) and the Clerk of the Court of Pasco County (the Clerk), Appellants, seek review of a nonfinal order granting class certification and appointing Mallards Cove, LLP, as. class representative. Mallards Cove filed a class action complaint asserting that Appellants had unlawfully taken private property of Mallards Cove[1] by transferring investment interest earned on deposit funds to the DOT rather than Mallards *930 Cove. These deposit funds were being held in the court registry pursuant to a quick-take eminent domain proceeding.[2]
Because we conclude that a constitutional violation did not occur in this case and Mallards Cove has failed to allege a justiciable case or controversy, we reverse the class certification. Based on this holding, we decline to reach the additional arguments raised by Appellants challenging various other elements of class certification.
I. FACTS AND PROCEDURAL HISTORY
Mallards Cove was a defendant in a 2007 quick-take eminent domain proceeding initiated by the DOT to take a tract of land owned by Mallards Cove. Pursuant to chapter 74, Florida Statutes (2007), which sets forth Florida’s quick-take eminent domain procedure,
specified public bodies are entitled to take possession and title to property in advance of a final judgment by filing a condemnation petition and declaration of taking and depositing a good faith estimate of the value of the land into the registry of the court. § 74.031.... [T]he trial court enters an order allowing the taking and directing the petitioner “to deposit in the registry of the court such sum of money as will fully secure and fully compensate the persons entitled to compensation as ultimately determined by the final judgment.” § 74.051(2). Upon making the deposit, the petitioner is vested with title and takes possession of the property and, in exchange, the right to full compensation for the property vests in the property owner. § 74.061. The matter of full compensation is then determined in accordance with the provisions of chapter 73, Florida Statutes (2007), which provides for the empanelling of a jury to make a final determination of value. §§ 74.061, 73.071.
Livingston v. Frank, 150 So.3d 239, 241 (Fla. 2d DCA2014).
In the Mallards Cove quick-take proceeding, the circuit court entered an order of taking on August 15, 2007, pursuant to stipulation of the parties. The DOT was required to deposit a good faith estimate of value in the amount of $2,004,320 into the registry of the court. The funds were deposited on August 30, 2007, and released to Mallards Cove, net of property taxes, on September 13, 2007.
While the funds were on deposit in the court registry, the Clerk elected to invest the funds as permitted by section 74.051(4),[3] which stated in pertinent part: “The clerk is authorized to invest such deposits so as to earn the highest interest obtainable under the circumstances in state or national financial institutions in Florida insured by the Federal Government. Ninety percent of the interest earned shall be paid to the petitioner.”[4] The Clerk earned investment interest on the deposit in the amount of $4396.49, and subsequently transferred ninety percent of that sum to the Department and retained ten percent, as provided by section 74.051(4). The eminent domain case was *931 concluded pursuant to a stipulated final judgment entered on December 13, 2007, by which Mallards Cove and the DOT stipulated to an amount of “full, just and reasonable compensation” for the property.[5] No appeal was taken in that case, and Mallards Cove does not challenge that taking here.
In 2009, Mallards Cove initiated the case now on appeal, seeking a declaration that section 74.051(4) of the quick-take eminent domain statute is unconstitutional in that it directs clerks to pay ninety percent of interest earned on the quick-take deposit funds to the condemning authority and asserting a claim of inverse condemnation against the Clerk and the DOT, resulting from the disbursement of ninety percent of the accumulated interest to the DOT rather than to Mallards Cove.
The circuit court ruled that, as a matter of law, Mallards Cove owned the deposit funds from the moment the DOT deposited the funds into the registry. The circuit court further ruled that Mallards Cove owned the interest that was earned when the Clerk invested the deposit funds and that this investment interest “was property entitled to constitutional protection entirely separate and apart from the real property that was taken by the [DOT] in the underlying quick taking procedure.” The circuit court extensively analyzed the requirements of class certification under Florida Rule of Civil Procedure 1.220 and ultimately granted class certification.
Appellants argue that the order on class certification must be reversed because, inter alia, Mallards Cove lacks the requisite standing to serve as a class representative since it did not own the deposit funds at the time interest was earned, the action is barred by res judicata due to the stipulated final judgment in the eminent domain case, and the requirements for class certification were not met. This appeal was stayed pending the appeal of Livingston, 150 So.3d 239, which involved similar questions of law regarding the inverse condemnation claim.
While the procedural posture of this case is different from that of Livingston because we now review an order granting class certification, Livingston is nonetheless determinative, as we discuss below. First, we find it useful to examine the operative constitutional provisions in eminent domain proceedings.
II. CONSTITUTIONAL ANALYSIS
The first operative constitutional provision is found in the Fifth Amendment to the United States Constitution and the second is found in our state constitution. The provisions are nearly identical.
A. Fifth Amendment
Recognizing the importance of property to our founding fathers, as well as their intention to limit the powers granted to the national government, James Madison led the first Congress to pass those amendments, including the Fifth, which we commonly refer to as our Bill of Rights. Meeting those philosophical pillars, the Fifth Amendment’s Takings Clause, made applicable to the states through the Fourteenth Amendment, Chicago, B. & Q.R. Co. v. City of Chicago, 166 U.S. 226, 239, 17 S.Ct. 581, 41 L.Ed. 979 (1897), provides: “[N]or shall private property be taken for public use, without just compensation,” U.S. Const, amend. V.
*932 As the text makes plain, “[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation.” Williamson Cnty. Reg’l Planning Comm’n v. Hamilton Bank of Johnson City, 473 U.S. 172, 194, 105 S.Ct. 8108, 87 L.Ed.2d 126 (1985). Just compensation, in this context, “means the full and perfect equivalent in money of the property taken.” United States v. Miller, 317 U.S. 369, 373, 63 S.Ct. 276, 87 L.Ed. 336 (1943). The value of a permanent taking is fair market value. Id. at 374, 63 S.Ct. 276. The owner
is entitled to be put in as good a position pecuniarily as if his property had not been taken. He must be made whole but is not entitled to more.... Just compensation includes all elements of value that inhere in the property, but it does not exceed market value fairly determined.
Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236 (1934); see also Brown v. Legal Found, of Wash., 538 U.S. 216, 236, 123 S.Ct. 1406, 155 L.Ed.2d 376 (2003). Further, just compensation “is measured by the property owner’s loss rather than the government’s gain.” Brown, 538 U.S. at 235-36, 123 S.Ct. 1406.
B. Florida’s Constitution
The second operative provision is found in the Takings Clause of Florida’s constitution, which provides: “No private property shall be taken except for a public purpose and with full compensation therefor paid to each owner or secured by deposit in the registry of the court and available to the owner.” Art. X, § 6(a), Fla. Const. Similar to its federal counterpart, “ ‘[t]he theory and purpose of that guaranty is that the owner shall be made whole so far as possible and practicable.’ ” Jacksonville Expressway Auth. v. Henry G. Du Pree Co., 108 So.2d 289, 292 (Fla.1958) (quoting Dade Cnty. v. Brigham, 47 So.2d 602, 604 (Fla.1950)). The Supreme Court of Florida has further stated: “[0]ur constitutional provision for full compensation requires that the courts determine the value of the property by taking into account all facts and circumstances which bear a reasonable relationship to the loss occasioned the owner by virtue of the taking of his property under the right of eminent domain.” Id. at 291.
C. Interest as a Component of Just Compensation
The United States Supreme Court has held that interest is a component of just compensation in federal eminent domain proceedings. Behm v. Dep’t of Transp., 383 So.2d 216, 217-18 (Fla.1980); see also Albrecht v. United States, 329 U.S. 599, 602, 67 S.Ct. 606, 91 L.Ed. 532 (1947) (“ ‘[J]ust compensation’ in the constitutional sense, has been held, absent a settlement between the parties, to be fan-market value at the time of taking plus ‘interest’ from that date to the date of payment.”); Seaboard Air Line Ry. Co. v. United States, 261 U.S. 299, 306, 43 S.Ct. 354, 67 L.Ed. 664 (1923). Florida’s quick-take statutory scheme includes an interest provision, § 74.061, and Florida’s legislature has thus “provided that interest is a part of the ‘full compensation’ required by article X, section 6, Florida Constitution, to be paid in eminent domain proceedings” in accordance with section 74.061.[6] Behm, *933 38B So.2d at 217-18 (stating that “the question of interest on condemnation awards ... is controlled by statute”).
III. CASE ON APPEAL
Reviewing the textual language left us by the founding fathers, two operational principles require application in this case. First, there must be a taking of property. All concede Mallards Cove’s real property was taken by the government pursuant to the quick-take eminent domain proceeding. This act triggers the second operational principle, the constitutional requirement for just compensation.
Here, the real property was taken pursuant to Florida’s statutory quick-take procedures found in chapter 74. Under chapter 74 and the Fifth Amendment’s mandate, Mallards Cove was entitled to full compensation. Full compensation requires that Mallards Cove, as the property owner, be placed in as good a position pecuniarily as if this property had not been taken, but no more. See Brown, 538 U.S. at 236, 123 S.Ct. 1406. Thus, while interest on the valuation of the property taken was a proper component of full compensation due to Mallards Cove, Mallards Cove and the DOT entered into a stipulated final judgment which resolved the amount of full compensation, including interest. No appeal was taken from that case.' Thus, the matter of full compensation has been fully and finally resolved and Mallards Cove cannot now be heard to seek additional compensation for the taking. See Livingston, 150 So.3d at 243-44.
Mallards Cove attempts to get around the finality of the eminent domain proceeding by arguing that a second taking occurred incident to that proceeding, and compensation is due for that second taking. Mallards Cove contends that, immediately upon deposit, the quick-take deposit funds became the private property of Mallards Cove and, as the owner of the principal, it is also the owner of the interest. Thus, Mallards Cove argues, a second taking resulted from the Clerk’s investment of the quick-take deposit funds and payment of ninety percent of that investment interest to the DOT.[7]
This argument was addressed and rejected in Livingston.
Under Florida’s quick-take statutory scheme, once the condemning authority makes the deposit, two acts occur simultaneously. First, the condemning authority acquires title to the condemned property, and, second, the property owner’s entitlement to full compensation under the respective constitutional provisions vests. § 74.061. It is the right to full compensation that vests, not a right to the specific funds....
Livingston, 150 So.3d at 244-45 (emphasis added).
Although it could have, the legislature did not expressly state that upon deposit those funds immediately became the private property of the property owner. Rather, the legislature recognized that in a quick-take scenario, that which vested upon the making of the deposit was the entitlement to constitutional compensation. Additionally, the legislature used permis *934 sive language by providing that “the court may direct that the sum of money set forth in the declaration of taking be paid forthwith to such defendants from the money deposited in the registry of the court.” § 74.071 (emphasis added). Finally, the legislature placed the property owner on notice of the risk that, should the final compensation award be less than the amount deposited, the condemnor would be entitled to reimbursement of the overage by way of a monetary judgment. Id.
Thus, pursuant to the plain language of chapter 74, when the DOT deposited quick-take funds into the registry, the right that vested in Mallards Cove was the entitlement to be paid full compensation for that property, not entitlement to those specific funds placed on deposit. See Livingston, 150 So.3d at 245. “ ‘[W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.’ ” Greenfield v. Daniels, 51 So.3d 421, 425 (Fla.2010) (alteration in original) (quoting Holly v. Auld, 450 So.2d 217, 219 (Fla.1984)).
Therefore, the circuit court erred.in determining that the deposit funds in this case were the personal property of Mallards Cove while those funds remained on deposit. See Livingston, 150 So.3d at 245. As the funds were not the property of Mallards Cove while on deposit, no taking could have .resulted, either from the actions of the Clerk or the DOT, when ninety percent of the interest earned on those funds was distributed to the DOT.
Mallards Cove has failed to allege a justiciable case or controversy and thus lacks legal standing to represent the putative class. See Sosa v. Safeway Premium Fin. Co., 73 So.3d 91, 116 (Fla.2011). This lack of standing requires reversal of the order granting class certification. See id.; United Auto. Ins. Co. v. Diagnostics of S. Fla., Inc., 921 So.2d 23, 25 (Fla. 3d DCA 2006).
IV. CONCLUSION
As the condemnee in a quick-take proceeding, Mallards Cove was entitled to be paid full compensation for the real property taken by the DOT. No further taking occurred. Full compensation was determined pursuant to a stipulated final judgment from which no appeal was taken, and an interest award on the monies used to make Mallards Cove whole would be a “double dip.” Mallards Cove has failed to establish that a justiciable case or controversy exists between it and the DOT or the Clerk. Accordingly, we reverse the order granting class certification and remand for further proceedings consistent with this opinion.
Reversed and remanded.
KELLY and BLACK, JJ., Concur.

. We refer to Mallards Cove throughout as the purported class representative.

. Chapter 74, Florida Statutes (2007)..

. At the time the funds were invested the statute at issue was section 74.051(3). The statute was renumbered in 2008, but the operative language is identical. Throughout this opinion, -the statutory reference will be to section 74.051(4).

.The last sentence of section 74.051(4) has since been amended, effective July 1, 2013, to provide: "Ninety percent of the interest earned shall be allocated in accordance with the ultimate ownership in the deposit.” See ch. 13-23, §§ 1, 2, at 220-21, Laws of Fla.

. The stipulated final judgment provides in part that Mallards Cove recovered from the DOT the sum of $2,450,000 “in full payment for the property ... and for statutory interest, subject to apportionment, and subject to the satisfaction of all liens, mortgages and encumbrances, and subject to payment to the tax collector.”

. We are not called upon in this case to determine whether section 74.061 is constitutionally infirm by reason of its limiting language, which provides for interest to the property owner "from the date of surrender of possession to the date of payment on the amount that the verdict exceeds the estimate of value set forth in the declaration of taking." (Emphasis added.) As discussed herein, Mallards Cove resolved the takings case by stipu *933 lation, not jury verdict, and the final judgment is dispositive as to the matter of full compensation, including interest as a component thereof.

. We note that, on its face, this argument is incongruous at best. If the government did take its private property, Mallards Cove would be entitled to just compensation; that is, to "be made whole.” Olson, 292 U.S. at 255, 54 S.Ct. 704. However, Mallards Cove claims it is entitled to ninety percent of the earned interest. As a matter of mathematics, the amount claimed by Mallards Cove is ten percent less than whole.